## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 07-120-01** |
| | : | |
| **v.** | : | **Judge Kessler** |
| | : | |
| **LESA BERRY,** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court impose a sentence within the Sentencing Guidelines.

## I.    BACKGROUND

On May 8, 2007, the United States Attorney's Office for the District of Columbia filed a one count Information charging the defendant with Uttering Forged Securities, 18 U.S.C. §613(a). The criminal conduct set forth in the Information commences on or about November 17, 2004. On May 3, 2007, the defendant, Lesa Berry, pled guilty to the one count Information. As part of her plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial:

The defendant was employed by the law firm of Dewey Ballantine, LLP., as an accounts receivable clerk from July 9, 2004 through September 7, 2006. The defendant received less supervision than employees whose responsibilities were primarily non-discretionary in nature. Through her employment, the defendant engaged in a scheme to steal more than a quarter of a million dollars in law firm funds. The defendant would take checks that were remitted to the law firm by mail from clients from around the Country for payment for legal services, and falsely

alter them by typing her name on the payee line of the check. Ms. Berry would then deposit the

check into her bank account at M & T Bank in Maryland. For example, the defendant took check

#11916 issued by Alliance Catholic Health Care to the law firm in the amount of $9,990.62

without permission, knowledge, or authority of the law firm, typed her name on the payee line

and deposited the check into her account on November 17, 2004. The defendant executed her

scheme on scores of occasions by falsely altering 44 different checks for a total amount of

$225,529, although Dewey Ballantine, LLP states the actual amount is $261,355, that was

deposited into her personal bank account.

## II.    SENTENCING CALCULATION

### A.    Statutory Minimum/Maximum

The maximum term of imprisonment is ten years for this Class C felony. 18 U.S.C.§

513(a). Presentence Investigation Report ("PSR") at ¶ 61.

### B.    United States Sentencing Guidelines Calculation

The Presentence Report writer has calculated defendant's total offense level to be 17 and

a criminal history category of I. PSR ¶ 26. Thus, the defendant's Guidelines range for violation

of 18 U.S.C. Section 513(a) would be 24 to 30 months of imprisonment. PSR at ¶ 62. Because

the applicable Guidelines range is in Zone D of the Sentencing Table, the defendant would not

be eligible for probation. PSR at ¶ 68.

The defense disputes the presentence investigation report writer's calculation of the

Sentencing Guidelines as they relate to the two point enhancement for defendant's role in the

offense. The basis of her dispute is twofold: i.)  the parties did not stipulate to the two point

enhancement in the plea agreement; and ii.) defendant did not hold a position of public or private

trust as contemplated by the Sentencing Guidelines §3B1.3 because she was an accounts receivable clerk for a law firm.

The plea agreement.    The presentence report writer correctly states at ¶ 63 of the PSR, "the plea agreement has no impact on the guideline calculations."  In addition, the parties agreed at ¶11 of the plea agreement that the this Court is not bound by the plea agreement in its sentencing of the defendant.  Specifically, the plea agreement states the following:

> **Court Not Bound by the Plea Agreement**
> 11.    It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B)  the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues.  In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in Title 18, United States Code, Section 3553(a), the parties reserve the right to answer any related inquiries from the Court.

Moreover, during the plea colloquy this Court assured itself that the defendant reviewed the entire plea agreement with her lawyer and that she understood the entire agreement.  The defendant understood that the Court was not bound by the plea agreement and could impose a maximum sentence of ten years for her violation as explained in ¶2 of the plea agreement. Therefore, the parties failure to stipulate to the two point enhancement in the plea agreement does not preclude this Court from considering the enhancement in its sentencing of the defendant.

Enhancement for abuse of a position of trust.  The Sentencing Guidelines require a two-level increase of a defendant's base offense level "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner thta significantly facilitated the commission

-3-

or concealment of the offense."  U.S. Sentencing Commission, <u>Guidelines Manual</u> §3B1.3

(2006) (hereinafter "Sentencing Guidelines" or "U.S.S.G.").  For the adjustment to apply, the

government must establish both elements:  (1) that the defendant held a place of public or private

trust; and (2) that the defendant abused that position in a way that significantly facilitated the

commission or concealment of the offense."  <u>U.S. v. Spear</u>, – F.3d –, 2007 WL 1821028 (10th

Cir. 2007) (federal immigration employee responsible for intake of applications for changes in

status was convicted of embezzlement of government funds in excess of $1,000 did not occupy a

position of trust for purposes of sentencing when kept fees and threw applications away in the

trash).

       The Tenth Circuit lays sets forth the legal standard for defining position of trust and D.C.

Circuit applies the same principles.  The most recent case, <u>Spear</u>, comes out of the Tenth Circuit

on June 26, 2007 and states the following:  "Position of trust has little to do with trustworthiness

and everything to do with authority and discretion.  The fact that a defendant was trusted by her

employer with significant responsibility ... is not determinative."  <u>Id.</u>, quoting <u>U.S. v. Edwards</u>,

(325 F.3d 1184 (10th Cir. 2003).  The definition of public or private trust is characterized by the

exercise of professional or managerial discretion and is concerned with persons in position of

authority abusing their lack of supervision to commit or conceal wrongdoing.  This discretion

requires more than engaging in mere ministerial tasks directed by standardized office protocols.

To determine whether a defendant occupies a position of trust, a functional analysis of the job

responsibilities must be examined to determined if those duties were, in fact ministerial or

managerial.  Opportunity and access do not equate to authority, or to the kind of substantial

discretionary judgement required for the §3B1.3 enhancement.  The proper standard asks whether

-4-

the defendant's duties were bonded by predetermined rules and protocols so as to be ministerial or whether she had the substantial freedom in her duties that arises from discretionary authority signifying a position of trust; restated, was the defendant merely in the right place at the right time which enabled opportunity and access to commit the crime, not by exercising the cloak of authority to stave off inquiry or decision making power to cover her tracks. Id; U.S. v. Robinson, 198 F.3d 973 (D.C. 2000) (defendant director of public school, convicted of embezzlement of funds obtained via contract awarded to school, in position of trust); U.S. v. Neville, 82 F.3d 1101) (D.C. 1996) (defendant corrections officer, convicted of bribery, in position of public trust).  The defendant was an accounts receivable clerk for a law firm.  The defense argues that the defendant did not hold a position of trust based on the principle set forth above.  Specifically, the defendant made no managerial decisions regarding monies that came into the law firm. Unfortunately, the government is without information to conduct a job analysis as conducted by the Court in the above cited cases.

However, the Seventh Circuit found a clerk in a hotel's accounts receivable department to have served in a position of private trust and thus could receive an upward adjustment under the Sentencing Guidelines.  In U.S. v. Tiojanco, 286 F.3d 1019 (7th Cir. 2002), the defendant, a clerk in the hotel's accounts receivable department, engaged in a scheme in which he stole hotel funds by disguising credit card refunds that went to credit cards he controlled.  The Court distinguished the Tiojanco's position essentially because the employer entrusted him with responsibilities that might otherwise go to someone with more formal education based on his long track record with the company.  He was able to turn his trick stealing in excess of $261,000 because he worked with the hotel's credit card accounts and, with access to them, he disguised credit card refunds

destined for hotel guests.

The Tiojanco Court surveyed recently decided cases and found that positions of private trust fall into two categories. The first includes people like doctors, lawyers, and investment advisors who have specialized expertise that leaves the average layman ill-equipped to monitor their job performance. The second category exists in organizational settings, where businesses or similar entities charge particular employees with deciding on a case by case basis, whether a particular expenditure or transfer of company funds or other valuables is necessary or beneficial to the organization. Some employees have unfettered authority to spend company money; others provide initial authorization that for reasons of efficiency is subject to nominal review.

The defendant was a billing coordinator receiving compensation in the amount of $54,000 annually. As a billing coordinator or clerk in the accounts receivable department, arguably she falls into the second category of individuals in place of trust. Although an accounts receivable clerk, the defendant had discretion over what should be done with proceeds received from the public for the benefit of the firm. She could have ensured refund or transfer. Being entrusted with those responsibilities and decisions, the firm provided little supervision which enabled the defendant to cover up her scheme for one year. Accordingly, the defendant can be eligible for the two point enhancement as stated by the PSR writer.

      C.  The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United

States Code, Section 3553(b)(1). <u>Booker</u>, 543 U.S. at 258. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Id.</u> at 261.

In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u> at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable <u>per</u> <u>se</u>. Not only is a sentence within the Guideline range reasonable <u>per</u> <u>se</u>, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court.  Each Supreme Court Justice in the various opinions in <u>Booker</u> recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history.  <u>See, e.g.</u>, <u>id.</u> at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); <u>id.</u> at 250 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); <u>id.</u> at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); <u>id.</u> at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.   This is so, said the court in <u>United States v. Wilson</u>, 350 F. Supp.2d 910 (D. Utah 2005) – the day after <u>Booker</u> was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress.  The resulting Guidelines, <u>Wilson</u> held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has

repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons."  Id. at 950.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in Section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

## III.    DEFENDANT SHOULD BE SENTENCED WITHIN THE GUIDELINES

The Government recommends that the Court sentence the defendant to a Guideline sentence.  Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553.  Those factors fall into three main categories:  the nature of the offense, the needs of the public, and the history and characteristics of the defendant.   United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

Nature of the Offense and Needs of the Public.  The defendant's illegal conduct causes concern for her credibility and trustworthiness when required to handle assets of others.  The government would urge this court to require probation to disclose this conviction to a third party who may want to utilize the defendant in a manner that requires her to handle money and assets

of others.  In this case, the defendant unlawfully took money belonging to her employer over a

significant period of time and amounting to a significant amount of money, then made personal

use of it.  It is vital that the Court send a message to both the defendant and the community that

such activities will not be tolerated, and that no personal circumstance or situation justifies

anyone to steal money from employers as did she - not just once, but over and over again for over

one year..

    <u>The history and characteristics of the defendant</u>.  The history and characteristics of the

defendant reveals that she is a forty one year old woman who, despite some personal adversity,

has had a healthy start in life.  For the past ten years she has worked in law firm departments that

deal with money and billing.  From this experience, she has learned the inter workings of a firm

and appears to have utilized this knowledge to her detriment in this case.  There is nothing about

the defendant that moves the government to urge this Court for more leniency that provided by

the plea agreement.

    The government urges this Court to sentence the defendant within the Guidelines,

specifically fashioning a sentence that would require the defendant to disclose this conviction to

her current and future employers, make financial disclosures to her probation officer, seek

approval prior to making applications for credit, meet an order for restitution in this case, and

participate and complete credit counseling.  A guideline sentence would serve the interests of the

community and give both the government and the defendant the benefit of the bargain negotiated.

V.    **CONCLUSION**

The government recommends that this Court sentence the defendant within the

Sentencing Guidelines.


Respectfully,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar


_____

Angela Hart-Edwards
Assistant United States Attorney
Pa. Bar No. 61468

Federal Major Crimes Section
555 4th Street, N.W.  #4241
Washington, DC 20530
Phone: 307-0031; Fax: 514-6010


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant via electronic filing and notification this 17th day of August, 2007.


_____

Angela Hart-Edwards
Assistant United States Attorney